UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA YANEZ-DAVISON,<br>Plaintiff,<br>v.<br>UNITED PARCEL SERVICE, INC., et al.,<br>Defendants. | No. 2:23-cv-03016-DC-AC<br><br>ORDER GRANTING DEFENDANT UPS'S MOTION TO DISMISS AND DENYING DEFENDANT UPS'S MOTION FOR RECONSIDERATION<br><br>(Doc. Nos. 33, 47) |

This matter is before the court on Defendant United Parcel Service, Inc.'s ("UPS") motion to dismiss (Doc. No. 33) and motion for the court to reconsider Magistrate Judge Claire's order denying Defendant UPS's motion for a protective order (Doc. No. 47). Pursuant to Local Rule 230(g), the pending motions were taken under submission to be decided on the papers. (Doc. No. 35.) For the reasons explained below, the court will grant Defendant UPS's motion to dismiss and deny as moot Defendant UPS's motion for reconsideration.

**BACKGROUND**

Plaintiff Christina Yanez-Davison filed this employment action in the San Joaquin Superior Court against Defendant UPS, her former employer; Defendant Joseph Dalia, her former supervisor; Defendant Jeff Davies, a manager at UPS; and Does 1–10. (Doc. No. 1-2.) On January 3, 2024, Defendant UPS filed a motion to dismiss all claims brought against it with prejudice. (Doc. No. 5.) On September 30, 2024, Defendant Davies filed a motion to dismiss

Plaintiff's sole claim brought against him—sexual harassment in violation of the California Fair Employment and Housing Act ("FEHA") (Doc. No. 21.) On February 26, 2025, this court issued an order on both motions to dismiss. (Doc. No. 31.) In that order, the court dismissed Plaintiff's claims brought under FEHA without leave to amend and consequently dismissed Defendant Davies from this action. (*Id.* at 15.) The court also dismissed Plaintiff's remaining state and federal claims with leave to amend. (*Id.*) On March 19, 2025, Plaintiff filed the operative first amended complaint ("FAC"). (Doc. No. 32.) Plaintiff alleges the following in the FAC:

Defendant UPS hired Plaintiff as a "Sort Supervisor" on March 18, 2011, at its Merced Center in Merced, California, and she worked there for eleven years, during which time she maintained a clean disciplinary record. (*Id.* at ¶¶ 17, 57.) When she was hired, Plaintiff was the only female supervisor in operations, and her job duties included overseeing the department. (*Id.* at ¶¶ 16, 17.)

Plaintiff experienced harassing behavior from "at least five male supervisors" and "four union representatives and stewards." (*Id.* at ¶ 21.) Drivers told Plaintiff she "couldn't tell them what to do." (*Id.* at ¶ 20.) Plaintiff's supervisor, Defendant Dalia, would "sit in on Plaintiff's operations, off the clock, which is not allowed." (*Id.* at ¶ 23.) Plaintiff informed a "business manager" and the "lead shop steward of the building" about Defendant Dalia's behavior, and he was then "instructed to leave or be walked off the property." (*Id.* at ¶ 24.)

Plaintiff believes she went to the human resources department at Defendant UPS in 2013 regarding Defendant Dalia, and they told Plaintiff to "kill him with kindness and nothing else was done." (*Id.* at ¶ 26.) According to Plaintiff, Defendant UPS was "going to do absolutely nothing to protect her," and Defendant Dalia's behavior continued for years. (*Id.* at ¶¶ 24–25.)

On June 6, 2018, a shop steward, Eric Garcia, lost his "DOT packages and blamed it on Plaintiff, even going to filing a grievance against Plaintiff." (*Id.* at ¶ 56.)

On or about July 10, 2018, Defendant Dalia grabbed Plaintiff's wrist during an altercation at work and "forcibly ejected Plaintiff out of the office and into a door." (*Id.* at ¶¶ 27–31.) Plaintiff contacted her "center manager" and took medical leave following the incident due to a "complete mental breakdown." (*Id.* at ¶ 34.) Plaintiff's doctor then prescribed her antidepressants.

(*Id.* at ¶ 35.) Defendant UPS then placed Defendant Dalia on a leave of absence while investigating the incident. (*Id.* at ¶ 36.)

Plaintiff was scheduled to speak at an investigation hearing on August 29, 2018, regarding the July 10, 2018 incident with Defendant Dalia, but it was cancelled "as [Defendant] Dalia was scheduled to return to work." (*Id.* at ¶ 37.) Further, Leanne Tatum, a coworker who witnessed the event, was placed on leave. (*Id.* at ¶ 32, 36.) On August 23, 2018, Plaintiff's car tires were slashed shortly after she returned to work from medical leave. (*Id.* at ¶ 38.) Plaintiff responded by filing a restraining order against Defendant Dalia. (*Id.*)

On July 26, 2021, former defendant Jeffrey Davies, Plaintiff's supervisor, accused Plaintiff of taking company property, specifically "scanners." (*Id.* at ¶ 39, 41.) On July 22, 2021, Plaintiff was ordered to quarantine at home by her doctor and the acting center manager, Daniel Ortiz. (*Id.* at ¶ 40.) Plaintiff told Davies that "she had made arrangements for the scanners to be dropped off at work before the start of the shift" because she was quarantining at home. (*Id.* at ¶ 42.) Davies then requested a doctor's note from Plaintiff but "not the rest of the local sort staff." (*Id.* at ¶ 43.) Davies told Plaintiff he would come to her house, though Plaintiff expressed discomfort with this. (*Id.* at ¶ 44.) Plaintiff then received a call from UPS security "asking if Plaintiff was home because Davies told security that he was at Plaintiff's doorstep." (*Id.* at ¶ 45.) Plaintiff believes that Davies was never at her home after reviewing her and her neighbor's cameras. (*Id.* at ¶ 46.) Plaintiff reported the incident to human resources but has no knowledge of any action being taken. (*Id.* at ¶ 47.)

On May 31, 2022, after Plaintiff had just returned from maternity leave, Davies called her into his office to speak with him and "another On road supervisor, Crystal." (*Id.* at ¶ 48.) Crystal then began to "air her own grievances against Plaintiff with [human resources] on a conference call." (*Id.*) Plaintiff clarified that she "was uncomfortable being behind closed doors" with Davies, but he was allowed to stay during the meeting. (*Id.* at ¶ 49.)

Plaintiff went on medical leave from June 24, 2022 to July 10, 2022, for "major anxiety," "due to the stress of the situation." (*Id.* at ¶ 51.) Plaintiff left her position at Defendant UPS on July 11, 2022. (*Id.* at ¶ 53.) Plaintiff states that she was "listed as an active employee until August

22, 2022[,] which prevented Plaintiff from receiving certain benefits." (*Id.*) Plaintiff maintains that during her eleven years at Defendant UPS, she had a clean disciplinary record and returned all property. (*Id.* at ¶ 57.)

Based on these factual allegations, Plaintiff asserts the following four claims: (1) intentional infliction of emotional distress against Defendant UPS and Defendant Dalia; (2) unfair business practice in violation of the California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq*., against Defendant UPS and Does 1–10; (3) violation of the Equal Pay Act against Defendant UPS and Does 1–10; and (4) wrongful termination in violation of public policy against Defendant UPS and Does 1–10. (Doc. No. 32 at ¶¶ 10–16.)

On April 2, 2025, Defendant UPS filed the pending motion to dismiss all claims brought against it in the FAC, with prejudice.[1] (Doc. No. 33.) Plaintiff filed an opposition to that motion on April 16, 2025. (Doc. No. 36.) On April 28, 2025, Defendant UPS filed a reply thereto. (Doc. No. 38.)

On August 22, 2025, Defendant UPS filed a motion for reconsideration by the undersigned of the magistrate judge's discovery order denying Defendant UPS's previous motion for a protective order. (Doc. Nos. 39, 46, 47.) In its motion, Defendant UPS sought a protective order temporarily staying discovery until this court resolved Defendant UPS's motion to dismiss the FAC, which the magistrate judge denied. (Doc. Nos. 39 at 2; 46.) Because this order will resolve Defendant UPS's motion to dismiss, the court will deny Defendant UPS's motion for reconsideration as moot.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed for lack of a

[1] Defendant Dalia answered the original complaint. (Doc. No. 29.) Because the court's February 26, 2025 order permitted Plaintiff to file "a first amended complaint to amend the claims for which leave to amend has been granted" (Doc. No. 31), the court will construe Defendant Dalia's answer as an answer to the FAC as well.

cognizable legal theory or the absence of sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). For purposes of a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

## ANALYSIS

### A. Intentional Infliction of Emotional Distress (Claim One)

To state a claim for intentional infliction of emotional distress ("IIED") under California law, a plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (internal quotation marks omitted). The defendant must also intend to inflict injury with the understanding that injury will result. *Hughes*, 46 Cal. 4th at 1051.

Defendant UPS argues Plaintiff's IIED claim should be dismissed because Plaintiff has not alleged facts sufficient to state a cognizable claim, and because the claim is preempted by the Worker's Compensation Act ("WCA") exclusivity doctrine. (Doc. No. 33 at 5–9.) In her opposition to Defendant UPS's motion, Plaintiff counters that her claim is not barred by the WCA because Defendant UPS's "role in cancelling the investigation, silencing the witnesses, and requiring Plaintiff to interact with her attacker places its conduct outside the scope of the 'compensation bargain.'" (Doc. No. 36 at 13.)

The WCA is the exclusive remedy for emotional distress arising from actions taken within the context of the employment relationship. *Carlos v. Old Dominion Freight Line, Inc.*, 726 F. App'x 576, 579 (9th Cir. 2018); *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 233 (1987); Cal. Lab. Code §§ 3600, *et seq.* WCA preemption applies even where an employer's acts within the employment relationship are "calculated to cause severe emotional disturbance." *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1099 (1992), *overruled on other grounds by Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998). Indeed, even "outrageous conduct" that occurred "at the worksite, in the normal course of the employer-employee relationship" falls within the WCA. *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (2008). However, there exists a "long-standing view that unlawful discrimination and retaliation in violation of FEHA falls outside the compensation bargain" and that "claims of intentional infliction of emotional distress based on such discrimination and retaliation" are not covered by WCA exclusivity. *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017).

Contrary to Plaintiff's assertions, the allegations against Defendant UPS in her FAC involve Defendant UPS's administration of employee leave and an internal investigation (or lack thereof) regarding an incident that occurred at the workplace, which is within the scope of the WCA. For example, Plaintiff alleges that Defendant UPS knew of and intentionally ratified Defendant Dalia's alleged misconduct causing Plaintiff emotional distress, including the specific incident, as shown by Defendant UPS placing Defendant Dalia on leave of absence while Defendant UPS investigated the incident. (Doc. No. 32 at ¶ 36.) Further, Plaintiff's allegations focus on Defendant UPS's cancellation of the "investigation hearing" regarding the incident with

Defendant Dalia that was scheduled for August 29, 2018, which Defendant UPS canceled "once [Defendant] Dalia was reinstated," and Plaintiff was forced to work alongside him again. (*Id.* at ¶¶ 37, 66–68.) Moreover, the colleague who witnessed the incident and would have testified at that hearing was placed on leave, which Plaintiff contends was motivated by Defendant UPS's desire to ensure she could not testify on Plaintiff's behalf regarding the incident. (*Id.* at ¶ 65.) Thus, the alleged conduct at issue here falls squarely within personnel decisions and are a "normal part of the employment relationship." *Miklosy*, 44 Cal. 4th at 901; *see also Cole v. Fair Oaks Fire Prot. Dist.,* 43 Cal. 3d 148, 160 (1987) (claims alleging misconduct that "are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances," fall with the exclusive remedy provisions of the WCA); *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) ("A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged."). Therefore, the WCA preempts Plaintiff's IIED claim against Defendant UPS. Because the court finds Plaintiff's IIED claim is preempted, the court need not address the parties' respective arguments as to whether Plaintiff sufficiently stated an IIED claim.

Accordingly, the court will grant Defendant UPS's motion to dismiss Plaintiff's IIED claim against Defendant UPS without leave to amend because it is preempted as a matter of law as to Defendant UPS.

**B. Violation of the Equal Pay Act (Claim Three)**

The Equal Pay Act prohibits sex-based wage discrimination by providing that no employer shall discriminate by paying different wages to employees of opposite sexes within an establishment for jobs that require substantially equal skill, effort, and responsibility, and which are performed under similar working conditions. 29 U.S.C. § 206(d)(1); *E.E.O.C. v. Maricopa Cnty. Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th Cir. 1984).

Defendant UPS argues that Plaintiff's Equal Pay Act claim should be dismissed because Plaintiff does not allege facts sufficient to state a cognizable claim. (Doc. No. 33 at 11.) According to Defendant UPS, Plaintiff fails to allege: (1) that violations occurred within the

"same establishment" as opposite-sex comparators; (2) any facts about the work she performed for which she was underpaid; and (3) how her work was substantially similar to work performed by men under similar working conditions. (*Id.*). The court agrees that Plaintiff's allegations are deficient. Though Plaintiff identifies by name three male supervisors that she alleges were paid more than she was paid, (Doc. No. 32 at ¶ 105), Plaintiff's complaint still does not allege any facts to demonstrate she performed her role under similar working conditions and that her role required similar skill, effort, and responsibility as that of her male counterparts. Though Plaintiff alleges that the male employees were also "supervisors," pleading job title alone is insufficient to demonstrate that they performed jobs that required similar skill, effort, and responsibilities. *See Roberson v. SEIU Healthcare 1199NW*, No. 24-cv-2138 MJP, 2025 WL 2458052, at *6 (W.D. Wash. Aug. 25, 2025) ("[I]t is actual job performance requirements, rather than job classifications or titles, that is determinative.") (quoting *EEOC v. Maricopa Cnty. Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th Cir. 1984)). Accordingly, Plaintiff's allegation that she was "similarly situated" is merely a legal conclusion and is otherwise unsupported by allegations of facts elsewhere in the complaint. *See Werner v. Advance Newhouse P'ship, LLC*, No. 1:13-cv-01259-LJO, 2013 WL 4487475, at *5 (E.D. Cal. Aug. 19, 2013) (dismissing Equal Pay Act claim because the plaintiff's allegation she was paid less than similarly situated male employees was conclusory and not entitled to the assumption of truth absent factual support); *Davis v. Inmar, Inc.*, No. 21-cv-03779-SBA, 2022 WL 3722122, at *5 (N.D. Cal. Aug. 29, 2022) (dismissing Equal Pay Act claim where plaintiff alleged only that an unidentified male colleague performed substantially similar work and was paid more, which was conclusory).

Therefore, the court will grant Defendant UPS's motion to dismiss Plaintiff's Equal Pay Act claim with leave to amend, as Plaintiff may be able to amend her claim to sufficiently state a claim.

**C. Unfair Business Practice (Claim Two)**

To state a UCL claim, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003), *as amended* (Sept. 22,

2003) (quoting Cal. Bus. & Prof. Code § 17200).

To state a claim under the fraudulent prong of the UCL, a plaintiff must allege facts that show reasonable members of the public are likely to be deceived by the allegedly fraudulent conduct. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). As to the fraudulent prong, plaintiff fails to allege facts to show that Defendant UPS engaged in fraudulent conduct and that reasonable members of the public would likely be deceived by Defendant UPS's alleged conduct. As Defendant UPS points out, Plaintiff only points to allegedly fraudulent business practices that affected Plaintiff but does not allege any facts to support that Defendant UPS's practices are likely to deceive members of the public. (Doc. No. 38 at 3.) Therefore, Plaintiff fails to state a claim under the fraudulent prong of the UCL.

To state a claim under the unlawful prong of the UCL, the alleged conduct must violate a "borrowed" law. *Davis*, 691 F.3d at 1168 (citation omitted). No independent right to sue exists under the "unlawful" prong of the UCL. *Mejia v. Chipotle Mexican Grill, Inc.*, 793 F. App'x 519, 521 (9th Cir. 2019). Here, Plaintiff points to California Labor Code § 1197.5—the Equal Pay Act—as being the borrowed law. (Doc. No. 32 at ¶ 11.) "The California Equal Pay Act is nearly identical to the federal statute and subject to the same analysis." *Goins v. United Parcel Serv. Inc.*, No. 21-cv-08722-PJH, 2022 WL 17652798, at *2 (N.D. Cal. Dec. 13, 2022) (citing *Green v. Par Pools Inc.*, 111 Cal. App. 4th 620, 623 (2003)). As the court has outlined above, Plaintiff has failed to state a claim under the federal Equal Pay Act, and therefore cannot state a claim under the unlawful prong predicated on either the federal or California Equal Pay Act. *See Valladares v. Specialized Loan Servicing, LLC,* No. 1:23-cv-01224-NODJ-SAB, 2023 WL 8435575, at *4 (E.D. Cal. Dec. 5, 2023) (dismissing plaintiff's UCL claim where plaintiff failed to properly state a claim for a violation of any underlying law); *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) (emphasizing that claims "for relief under the unfair competition law (Bus. & Prof. Code, § 17200 *et seq*.)—stand or fall depending on the fate of the antecedent substantive causes of action").

As for the unfair prong, "[a] business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and

causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). Here, Plaintiff has not sufficiently alleged an unfair business practice by Defendant UPS. Notably, Plaintiff's complaint is devoid of any factual allegations to support any of the elements of a UCL claim under the unfair prong. Moreover, in opposing Defendant UPS's motion to dismiss, Plaintiff does not mention her UCL claim under the unfair prong, let alone offer any argument regarding that claim.

Therefore, the court will dismiss Plaintiff's UCL claim with leave to amend, as Plaintiff may be able to amend her claim to sufficiently state a claim.

**D. Wrongful Termination (Claim Four)**

To state a common law claim for wrongful termination in violation of public policy, Plaintiff must allege: (1) she was employed by UPS; (2) UPS discharged her; (3) "violation of public policy substantially motivated the discharge," and (4) the discharge caused her harm. *See Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913, 920 (2014). The policy must be "(1) delineated in either constitutional or statutory provisions; (2) public in the sense that it inures to the benefit of the public rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." *Id.* (citations and internal quotation marks omitted).

Defendant UPS argues Plaintiff's claim for wrongful termination in violation of public policy fails because even assuming her claim is premised on a violation of California Labor Code § 1102.5, which provides protections for whistleblowers, Plaintiff has failed to plead facts to establish that there was a causal connection between her reporting of the alleged gender harassment and her termination. (Doc. No. 33 at 13.) Plaintiff argues in opposition that she has "alleged that her discharge was substantially motivated by her protected activity under Labor Code § 1102.5, specifically her repeated internal reports of unlawful gender-based discrimination and harassment." (Doc. No. 36 at 17.) Plaintiff avers that these reports were met with "escalating retaliatory conduct that culminated in constructive discharge," which is sufficient to allege a causal connection. (*Id.*)

In order to state a claim under section 1102.5, a plaintiff must allege that "(1) that the

employee engaged in protected activity; (2) that he was thereafter subjected to an adverse employment action by his employer; and (3) that there was a causal link between the employee's protected activity and the adverse employment action." *Crane v. Chevron U.S.A. Inc.*, No. 1:19-cv-000805-DAD-JLT, 2020 WL 1046835, at *10 (E.D. Cal. Mar. 4, 2020) (citation omitted); *see also Mokler v. County of Orange*, 157 Cal. App. 4th 121, 138 (2007). Causation may be inferred from circumstantial evidence, including "the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." *Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1156 (N.D. Cal. 2013) (citing *Morgan v. Regents of Univ. of Cal.,* 88 Cal. App. 4th 52, 69–70 (2000)).

Here, Plaintiff does not allege any facts regarding the causal connection between her various reports to Defendant UPS's human resources department in 2013, 2021, and 2022 and her resignation in 2022. (Doc. No. 32 at ¶¶ 26, 47, 55.) Plaintiff also does not clearly allege a new disclosure of unlawful conduct as to the 2022 report, as it appears Plaintiff was on the receiving end of a coworker's grievances during that meeting. (Doc. No. 32 at ¶ 48–50.) Plaintiff does not allege a causal link between the conditions that led to her resignation in 2022 and her reports made in 2013 and 2021. Nor does Plaintiff allege that the individuals responsible for those conditions had specific knowledge of any protected report made by Plaintiff. *See De Vera v. United Airlines, Inc.*, No. 25-cv-07814-JSC, 2026 WL 2101849, at *5 (N.D. Cal. July 21, 2026) (dismissing plaintiff's retaliation claim under section 1102.5 where plaintiff did not include facts to show proximity in time between plaintiff's protected activity or the employer's knowledge of the protected activity); *see also Morgan*, 88 Cal. App. 4th at 70 ("Essential to a causal link is evidence that the employer was aware the plaintiff had engaged in a protected activity.") (citation omitted). Plaintiff also does not meaningfully address in her opposition Defendant's argument that she has failed to allege facts regarding any causal link between her reports and resignation. Indeed, Plaintiff summarily states that the facts alleged in her FAC are sufficient to allege a causal connection under California law. (Doc. No. 36 at 17.) The court does not agree.

Accordingly, the court will grant Defendant UPS's motion to dismiss Plaintiff's wrongful

termination claim with leave to amend, as Plaintiff may be able to amend her claim to sufficiently state a claim.[2]

**CONCLUSION**

For the reasons explained above:

1. Defendant UPS's motion to dismiss (Doc. No. 33) is GRANTED as follows:
    a. Plaintiff's first claim against Defendant UPS for intentional infliction of emotional distress is dismissed without leave to amend;
    b. Plaintiff's second claim for unfair business practice is dismissed with leave to amend;
    c. Plaintiff's third claim for violation of the Equal Pay Act is dismissed with leave to amend;
    d. Plaintiff's fourth claim for wrongful termination is dismissed with leave to amend;
2. Defendant UPS's motion for reconsideration of the magistrate judge's order (Doc. No. 47) is DENIED as having been rendered moot by this order;
3. Within fourteen (14) days of the date of entry of this order, Plaintiff shall file a second amended complaint to amend the claims for which leave to amend has been granted, or alternatively, file a notice of her intent not to file a second amended complaint and to proceed only on her first amended complaint's claim against Defendant Dalia; and

/////

/////

/////

/////

---

[2] To the extent Plaintiff premises her wrongful termination claim on a violation of the Equal Pay Act, that claim is also insufficiently pled and therefore her wrongful termination claim may not stand on that claim for the reasons stated above. *See Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007) (dismissing plaintiff's cause of action for wrongful termination in violation of public policy because plaintiff failed to state a claim as to the underlying FEHA cause of action).

4. If Plaintiff opts to file a second amended complaint, Defendant UPS and Defendant Dalia shall file their respective responses within twenty-one (21) days.

IT IS SO ORDERED.

Dated: **September 14, 2026**

Dena Coggins
United States District Judge